UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| UNITED STATES OF AMERICA, | * | CR. 81-30007-RAL |
|---|---|---|
| Plaintiff, | * | |
| vs. | * | OPINION AND ORDER |
| | * | DENYING DEFENDANT'S |
| LEIGHTON LEE FAY | * | MOTION TO DISMISS |
| Defendant. | * | |

**I. Procedural History and Facts**

On May 15, 1981, Leighton Lee Fay ("Fay") was convicted of four counts of assault resulting in serious bodily injury, three counts of assault with a dangerous weapon, and one count of assault by striking, beating, or wounding in the United States District Court for the District of South Dakota. Doc. 1 at ¶¶ 59-60. He was sentenced to forty-five years and six months in prison. Doc. 1 at ¶ 63. Fay appealed his convictions, and the United States Court of Appeals for the Eighth Circuit affirmed in part and reversed in part, leaving Fay with a sentence of forty years and six months in prison. United States v. Fay, 668 F.2d 375, 377 (8th Cir. 1981).

Fay in 1983 filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of South Dakota. Doc. 1 at ¶ 91. The motion argued that the Major Crimes Act, 18 U.S.C. § 1153, violated the Fort Laramie Treaty of 1868, and therefore that the court was without jurisdiction over Fay. Fay v. Chester, No. 08-3301, 2010 WL 9462554, at *1 (D. Kan. Aug. 25, 2010) (providing procedural history of Fay's unsuccessful challenges to his conviction and sentence). The motion was denied. Id.

Fay then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Washington, where Fay was incarcerated at the time. Fay v.

Thornburg, No. 89-35607, 1990 WL 56172, at *1 (9th Cir. Apr. 27, 1990). After allowing Fay to amend his petition twice, the District Court in Washington deemed the petition frivolous and dismissed the petition without prejudice. Id. On appeal, the United States Court of Appeals for the Ninth Circuit reversed and remanded, finding that Fay's claims were not frivolous. Id. at *2. On remand, the District Court for the Eastern District of Washington determined that the petition was one under 28 U.S.C. § 2255 for habeas corpus. Fay v. Thornburgh, No. 91-CIV-3032, 1992 WL 63394, at *1 (D.S.D. Mar. 9, 1992). Pursuant to Rule 4 of the Rules Governing Section 2255 proceedings, the case then was transferred to the United States District Court for the District of South Dakota where Fay was originally convicted and sentenced in 1981. Id.

In an amended petition in the District of South Dakota, Fay argued that the federal district court lacked jurisdiction over him at the time of his conviction and sentence, that his transfer from federal to state prison was unconstitutional, and that his conviction and sentence were illegal. Fay v. Thornburgh, 1992 WL 63394, at *1. The United States District Court for the District of South Dakota denied Fay's petition for habeas corpus in its entirety. Id. at *3. On appeal, the Eighth Circuit affirmed. Fay v. Thornburgh, No. 92-1764SD, 1992 WL 354483 (8th Cir. Dec. 3, 1992). Fay then appealed to the Supreme Court of the United States for a writ of certiorari, which was denied. Fay v. Reno, 508 U.S. 954 (1993).

In September 2004, Fay was released on parole. Doc. 16 at 3. Within one month of release, Fay was charged with escape in violation of his parole and was re-incarcerated. Doc. 16 at 3. Although Fay was acquitted of the escape charge, the United States Parole Commission ("USPC") nonetheless determined that Fay had escaped and continued his presumptive parole date. Doc. 16 at 3. On November 18, 2005, Fay was once again paroled; however, he remained

2

under the jurisdiction of the USPC pursuant to 18 U.S.C. §§ 4163-64 until February 13, 2021. Fay v. Chester, 2010 WL 9462554, at *2. On September 18, 2006, the USPC filed a petition to revoke Fay's parole and issued a warrant for his arrest. Doc. 6 at 2. After Fay was arrested, a hearing examiner conducted a hearing on January 12, 2007, and thereafter revoked Fay's parole. Fay v. Chester, 2010 WL 9462554, at *2. The USPC affirmed the hearing examiner's decision to revoke parole, finding that Fay had committed assault and battery, by inflicting a knife wound to another person, and that Fay had been intoxicated in public. Doc. 6 at 2. The USPC's decision revoked substantial good time credit previously awarded to Fay and remanded Fay to custody until September 19, 2016. Doc. 6 at 2.

On May 19, 2007, Fay filed motions in the District of South Dakota to dismiss the parole revocation and to correct the content of his presentence report, which were denied. Doc. 15 at 2. In 2010, while incarcerated in Leavenworth, Kansas, Fay filed an action for mandamus relief in the United States District Court for the District of Kansas. Fay v. United States, No. 5:10-CV-03015, 2010 WL 446552 (D. Kan. Feb. 4, 2010). Fay claimed that he was innocent of the 1981 charges for which he was convicted and sentenced, that the District of South Dakota lacked jurisdiction over his criminal case because he is a Sioux Indian and the Sioux Nation is sovereign, and that the USPC improperly considered his past criminal conduct and the escape charge of which he was acquitted. Id. at *1. The District Court of Kansas dismissed the mandamus petition as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Id. at *2. The United States Court of Appeals for the Tenth Circuit reviewed Fay's allegations de novo, concluded that Fay's allegations were frivolous, and therefore dismissed Fay's appeal. Fay v. United States, 389 F. App'x 802, 803-04 (10th Cir. 2010).

3

In the case now filed, Fay once again is seeking relief from his conviction and sentence. This time Fay wishes to have all charges, convictions, and allegations against him dismissed under Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure. Doc. 16 at 1. In a Motion to Append Memorandum of Law and Legal Opinion, Fay argues that the courts have improperly recharacterized his Rule 60(b)(4) and (6) motions as motions under 28 U.S.C. § 2255, and that his Rule 60(b) motions are not habeas petitions, but remain proper avenues for relief because the original sentencing court lacked subject matter jurisdiction. Doc. 18 at 2.

## II. Discussion

### A. Federal Rule of Civil Procedure 60(b) Argument

Fay contests federal court subject matter jurisdiction over his original criminal case and is seeking relief from all charges and allegations against him through Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure. Doc. 16 at 1. Under Rule 60(b)(4), the court may grant relief from a final judgment in a civil case if the judgment is void. F. R. Civ. P. 60(b)(4). A judgment is void if the court issuing the judgment lacks subject matter jurisdiction. Gonzalez v. Crosby, 545 U.S. 524, 534 (2005). Under Rule 60(b)(6), the court may grant relief in a civil case from "a final judgment, order, or proceeding . . . for any other reason that justifies relief." F. R. Civ. P. 60(b)(4). "Relief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." Harley v. Zoesch, 413 F.3d 866, 871 (8th Cir. 2005).

Fay relies on Rule 60 of the Federal Rules of Civil Procedure to attack his conviction and sentence in a criminal case. Rule 60 exists to correct a civil—not a criminal—judgment. See

4

United States v. Camacho-Bordes, 94 F.3d 1168, 1171 n.2 (8th Cir. 1996); United States v. Salter, No. 2:04-CR-20008, 2009 WL 3850147 at *1 (W.D. Ark. Oct. 20, 2009) ("Rule 60 of the Federal Rules of Civil Procedure do[es] not apply in a criminal case."). Statutes such as 28 U.S.C. §§ 2241, 2254, and 2255 provide the avenues and federal jurisdiction to challenge a criminal conviction. Fay's invocation of a Federal Rule of Civil Procedure in this criminal case is altogether mistaken. United States v. Eggleston, 24 F. App'x 656 (8th Cir. 2002) ("Rule 60(b) applies only to civil cases").

"It is well-established that inmates may not bypass the authorization requirement of . . . § 2255 action by purporting to invoke some other procedure." United States v. Lambros, 404 F.3d 1034, 1036 (8th Cir. 2005). Rule 60(b) of the Federal Rules of Civil Procedure allows a party to seek relief from a court's final judgment and attempt to reopen the case in certain limited circumstances. Gonzalez v. Crosby, 545 U.S. 524, 528 (2005). Rule 60(b)(6) "permits reopening when the movant shows 'any . . . reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rules 60(b)(1)-(5)." Id. at 528-29 (quoting Fed. R. Civ. P. 60(b)(6)). The Eighth Circuit has outlined how district courts within its ambit shall handle motions filed under Rule 60(b) by a petitioner who has previously been denied habeas corpus relief:

> [W]e encourage district courts, in dealing with purported Rule 60(b) motions following the dismissal of habeas petitions, to employ a procedure whereby the district court files the purported Rule 60(b) motion and then conducts a brief initial inquiry to determine whether the allegations in the Rule 60(b) motion in fact amount to a second or successive collateral attack under either 28 U.S.C. § 2255 or § 2254. If the district court determines the Rule 60(b) motion is actually a second or successive habeas petition, the district court should dismiss it for failure to obtain authorization from the Court of Appeals or, in its discretion, may

> transfer the purported Rule 60(b) motion to the Court of Appeals. Depending on which course of action the district court chooses, the petitioner may either appeal the dismissal of the purported Rule 60(b) motion or, if the district court has elected to transfer the purported 60(b) motion to the Court of Appeals, await the action of the Court of Appeals.

Boyd v. United States, 304 F.3d 813, 814 (8th Cir. 2002). Fay has not received authorization from the Eighth Circuit to file another § 2255 motion, so Fay's motion under Rule 60(b) may be dismissed if it is a successive habeas petition. Boyd, 304 F.3d at 814.

A Rule 60(b) motion is a second or successive habeas petition when it "seeks to add a new ground for relief" or it "attacks the federal court's previous resolution of a claim *on the merits*." Gonzalez, 545 U.S. at 532; see also Ward v. Norris, 577 F.3d 925, 933 (8th Cir. 2009) (holding that a Rule 60 motion is a second habeas petition if it contains claims that attach a federal court's resolution of a case on the merits); United States v. Lurie, 207 F.3d 1075, 1077 (8th Cir. 2000) ("A challenge to a federal conviction . . . is most appropriately brought as a motion under 28 U.S.C. § 2255."). A Rule 60(b) motion is proper to address a "defect in the integrity of the federal habeas proceeding." Gonzalez, 524 U.S. at 525.

All of the claims set forth in Fay's Rule 60(b) motion challenge the merits of his conviction; most of the claims are ones that Fay previously raised on appeal or in his numerous post-conviction collateral attacks on his conviction. Thus, Fay's Rule 60(b) motion is substantively a successive habeas petition. Under 28 U.S.C. § 2255(h), a successive petition must be certified as provided in 28 U.S.C. § 2244 by a panel of the appropriate court of appeals to contain either "newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense;" or "a new rule of

6

constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Because Fay has not done so, his Rule 60(b) motion can be denied.

As an inmate serving a sentence imposed by a federal court, Fay's avenues to attack his conviction and sentence are through direct appeal and under 28 U.S.C. § 2255. See Abdullah v. Hedrick, 392 F.3d 957, 959 (8th Cir. 2004). Fay has time limits within which to appeal and to petition under § 2255, which have passed. Although this Court could deny Fay's motion without any further explanation, Fay's propensity to file cases and motions and Fay's ongoing incarceration prompts this Court to address the merits of Fay's argument to explain to Fay that regardless of the avenue through which he might bring such claims to a federal court, the claims lack merit and his continued incarceration is legal and valid.

### B. Indian Country Jurisdiction

Fay contends that the United States can only possess jurisdiction over Indian Country if the tribes cede jurisdiction to the United States, because (1) Congress does not have plenary power; (2) the Sioux Nation never gave jurisdiction to the United States under the Fort Laramie Treaty; (3) the Black Hills is un-ceded Treaty land or Indian Country; (4) the United States does not possess jurisdiction in the Black Hills; (5) the Parole Commission had no authority when it conducted a hearing in Indian Country and could not extend Fay's sentence through revocation of parole. Doc. 16 at 2.

#### 1. Plenary Power of Congress

Fay argues that the framers of the Constitution rejected the notion of a plenary power over relations with the Indian Nations, and that without relation to a specific power drawn from the Constitution, the federal and state statutes enacted to control the Indian nations are

unconstitutional. Doc. 16 at 4. Fay contends that the only power given to Congress over the Indian nations is to regulate commerce. Doc. 16 at 2. However, the Supreme Court of the United States has recognized a plenary power to regulate Indian affairs deriving from both the text and structure of the Constitution. See e.g., United States v. Lara, 541 U.S. 193, 200 (2004) (holding that the commerce and treaty clauses and structure of Constitution are basis for "plenary and exclusive" power of Congress); Morton v. Mancari, 417 U.S. 535, 551-52 (1974) ("The plenary power of Congress to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution itself."); McClanahan v. State Tax Comm'n of Ariz., 411 U.S. 164, 172 n.7 (1973) ("The source of federal authority over Indian matters has been the subject of some confusion, but it is now generally recognized that the power derives from federal responsibility for regulating commerce with Indian tribes and for treaty making."). The authority of Congress over Indian affairs is now well recognized and established.

### 2. Jurisdiction conferred to the United States in Indian Country.

Fay argues that the only legal agreement between the Sioux Nation and the United States is the Fort Laramie Treaty, and because this treaty never relinquished sovereignty, any claim of jurisdiction the United States has is void. Doc. 16 at 7. However, it is well-settled that the federal courts have jurisdiction in Indian Country over crimes like the ones for which Fay was convicted. The Major Crimes Act, 18 U.S.C. § 1153, grants exclusive jurisdiction to the United States to prosecute Indians[1] for certain crimes occurring in Indian Country. The Supreme Court

---

[1] The word "Indian" has acquired a legal meaning through the course of this nation's history. This Court has previously stated as follows:

> The origin of the word "Indian" dates back to the mistaken belief of early European explorers in North America that they had encountered

8

of the United States upheld the constitutionality of the Major Crimes Act in United States v. Kagama, 118 U.S. 375 (1886). The Supreme Court has continued to make clear that its decision in Kagama was not anomalous. See Negonsott v. Samuel, 507 U.S. 99, 103 (1993); Lone Wolf v. Hitchcock, 187 U.S. 553, 566–67 (1903); United States v. Thomas, 151 U.S. 577, 585 (1894). "Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country." United States v. Antelope, 430 U.S. 641, 648 (1977). The language of the Fort Laramie Treaty, does not exempt Native Americans of Sioux Indian heritage from prosecution in federal court for major crimes committed in Indian Country. See Wright v. United States, No. 11-3032-RAL, 2012 WL 1678984, at *5 (D.S.D. May 14, 2012). Fay is incorrect in asserting that the United States does not possess criminal jurisdiction in Indian Country.

### 3. Black Hills Taking

Fay argues that the Black Hills are Indian Country where the Sioux Nation is independently sovereign, and any claim of jurisdiction that the United States has in the Black Hills is void because the "taking" of this land was in violation of the Constitution. Doc. 16 at 7. This Court is cognizant how, in a manner altogether unfair to the Sioux Indian tribes, the

---

> people in the East Indies. While it is more appropriate in this era to refer to this nation's indigenous people as Native Americans or American Indians, this Opinion and Order uses the word "Indian" as that is the word used for two centuries in legal opinions to refer to the indigenous population of North America and has come to have a distinct legal meaning. See St. Cloud v. United States, 702 F.Supp. 1456, 1459-61 (D.S.D. 1988) (delineating meaning of "Indian" under laws of United States); see also United States v. Stymiest, 581 F.3d 759, 763-64 (8th Cir. 2009).

F.T.C. v. Payday Fin., LLC, No. 11-3017-RAL, 2013 WL 1309437, at *2 n.1 (D.S.D. March 28, 2013).

Great Sioux Indian Reservation created by the Fort Laramie Treaty eroded into pockets of the least desirable land in South Dakota as "Indian Country" reservations, and how the Black Hills of South Dakota and much of the land useful for agricultural and ranching ventures ended up not being "Indian Country." See F.T.C. v. Payday Fin., LLC, No. 11-3017-RAL, 2013 WL 1309437, at *2 (D.S.D. Mar. 28, 2013) (discussing how the Great Sioux Indian Reservation devolved into separate reservations that in turn became "checkerboards" of trust and fee land and the concomitant extreme poverty on South Dakota Indian reservations from the centuries of federal "Indian Country" policies resulting in "Indian Country" in South Dakota consisting of largely remote land often lacking in natural resources). However, Fay's argument fails for two obvious reasons. First, his conviction does not arise out of his conduct in the Black Hills; the Black Hills were not "Indian Country" when Fay committed his offenses, and Fay's offenses were not committed in the Black Hills, but rather on a South Dakota reservation. Second, the Supreme Court has addressed the legal propriety of the seizure of the Black Hills from the Sioux Indians and has determined that monetary compensation is the remedy for taking of those lands. United States v. Sioux Nation of Indians, 448 U.S. 371, 424 (1980). The remedy is not an exemption of Fay or Native Americans of Sioux Indian heritage from prosecution under the Major Crimes Act.

### 4. Jurisdiction in Indian Country

Fay argues that in Ex Parte Crow Dog, 109 U.S. 556 (1883), the Supreme Court excluded Indian Country from federal jurisdiction, and when the Major Crimes Act extended federal jurisdiction in Indian Country, it was done in violation of United States Constitution, specifically the Article 6 supremacy clause and the Article 1, Section 9 prohibition of ex post facto laws.

Doc. 16 at 9. The decision in Ex Parte Crow Dog in fact prompted Congress to enact the Major Crimes Act. Cohen's Handbook of Federal Indian Law § 9.02, at 749 (Nell Jessup Newton ed., 2012) (discussing how Congress enacted the original version of the Indian Major Crimes Act in 1885, in response to the Supreme Court's decision in Ex Parte Crow Dog). However, after its enactment and thus after Ex Parte Crow Dog, the constitutionality of the Major Crimes Act has been upheld by the Supreme Court numerous times. See e.g., Kagama, 118 U.S. at 385; Negonsott, 507 U.S. at 103; Lone Wolf, 187 U.S. at 566-67; Thomas, 151 U.S. at 585; Antelope, 430 U.S. at 648.

Fay's argument incorrectly uses the term "ex post facto laws" to mean what he believes to be unconstitutional, arbitrary, and vindictive legislation. Doc. 16 at 9. An ex post facto law is one "that impermissibly applies retroactively, esp[ecially] in a way that negatively affects a person's rights, as by criminalizing an action that was legal when committed." Black's Law Dictionary, 661 (9th ed. 2009). The Major Crimes Act was passed in 1885; Fay's criminal conduct at issue here took place more than 96 years after the Major Crimes Act was enacted. The Major Crimes Act did not retroactively criminalize an action that was legal when Fay committed it in violation of Article 1 Section 9 of the United States Constitution.

### 5. Authority of Parole Commission and Validity of Custody

Fay argues that when the USPC official conducted a hearing that revoked his parole, it did so without legal authority because the hearing was held in what Fay considers to be Indian Country, in the Black Hills of South Dakota. Doc. 16 at 13. Fay also argues that the USPC did not have the authority to extend his sentence through revocation of parole. The federal criminal system does not now have parole, but did when Fay originally was convicted. A now-repealed

11

provision, 18 U.S.C. § 4218(d), applies to Fay who was sentenced in 1981, giving Fay an opportunity for parole and giving the USPC authority to revoke parole. Fay previously has challenged, unsuccessfully, the USPC decision to revoke his parole and return him to custody. Fay v. Chester, 2010 WL 9462554; Fay v. United States, 2010 WL 446552. As discussed above, the federal government does have jurisdiction, and the USPC acted within its given statutory authority. The decisions, now final, upholding the USPC actions are barred by res judicata in Fay's case. See Brown v. Felsen, 442 U.S. 127, 131 (1979).

### III. Conclusion

Even if the Federal Rules of Civil Procedure applied in order to permit this Court to alter a judgment in a criminal case, which they do not, Fay's claims fail to demonstrate that relief under Rule 60(b) would be proper. Fay's claim that the federal courts do not have subject matter jurisdiction in "Indian Country" is incorrect. The judgments which Fay challenges are valid, and therefore relief sought under Rule 60(b)(4) is inappropriate. Fay has had a full and fair opportunity to litigate his claims previously and has not been prevented from receiving adequate redress, albeit not the results Fay desired. This is not one of the exceptional circumstances that would justify relief under Rule 60(b)(6), even if Rule 60(b) were applicable here. If the Rule 60(b) claims are construed to be habeas claims under 28 U.S.C. § 2255, Fay's claims still fail because he has not received proper authorization from the Eighth Circuit, has filed multiple petitions, and has passed the time limit for further appeal of his 1981 criminal conviction or § 2255 habeas relief.

### IV. Order

For the reasons explained above, it is hereby

12

ORDERED that the Defendant's Motion Pursuant to Rule 60(b), Doc. 16, is denied.

Dated July 10, 2013.

        BY THE COURT:

        */s/ Roberto A. Lange*
        ROBERTO A. LANGE
        UNITED STATES DISTRICT JUDGE